## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

EMMITT MARTINEZ WARREN,

      Petitioner,

v.                                                         Civil Action No.: 3:07cv498

G. M. HINKLE,

      Respondent.

### <u>MEMORANDUM OPINION</u>

      Petitioner, Emmitt Martinez Warren, a Virginia state inmate proceeding *pro se*, brings

this petition ("Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

challenges his convictions in the Circuit Court of the City of Portsmouth ("Circuit Court") for

one count of attempted murder and one count of use of a firearm in the commission of a felony.

Jurisdiction is proper pursuant to 28 U.S.C. §§ 636(c) and 2254.

      Petitioner contends that he is entitled to relief on the following grounds:[1]

| | |
|---|---|
| Claim One | Petitioner states that he discovered after his trial and conviction that the Commonwealth used false testimony by Commonwealth's witnesses Cedric Williams, and Ms. Temesha Green[2] during Petitioner's trial and failed to correct it in violation of Petitioner's Fourteenth Amendment constitutional rights to due process of law and a fair trial. |
| Claim Two | Petitioner states that the photographic display used by the investigators and the Commonwealth to identify Petitioner was impermissibly suggestive as the Commonwealth witness failed to identify Petitioner after the crime or at trial. |

---

     [1] Petitioner's grounds for relief and the other quotations to Petitioner's submissions are restated verbatim with capitalization corrected.

     [2] There are various spellings of the victim's name in the record.  For purposes of this opinion, the Court has utilized the spelling of the victim's name as reflected in the Opinion of the Court of Appeals of Virginia.

Claim Three   Petitioner states that "no" GSR [gunshot residue] testing was done on the
Commonwealth's witness Cedric Williams to determine whether this
witness fired and shot Petitioner supporting Petitioner's after discovered
evidence that a female who came forward after trial (Ms. Renita Whitfield)
and provided a sworn affidavit stating she overheard Cedric Williams brag
that it was he who shot the Petitioner in front of Ms. Green['s] residence
and not Ms. Green as she testified, and now Petitioner challenges the
sufficiency of the Commonwealth's evidence to be a due process challenge
to Petitioner's conviction.

Claim Four:   Insufficent evidence.[3]

Respondent has moved to dismiss on the grounds that Claims One, Two, and Three are

procedurally defaulted, and Claim Four lacks merit. Petitioner has responded.[4] The matter is

ripe for disposition.

## I. Procedural History

On June 25, 2004, in the Circuit Court, a jury convicted Petitioner on charges of

attempted murder and use of a firearm in commission of that crime. Thereafter, Petitioner filed a

motion for a new trial based on newly-discovered evidence contained in the affidavit of one

Renita Whitfield. The Circuit Court denied Petitioner's motion.

---

[3] Petitioner also alleges that the Virginia courts denied him due process in conjunction
with the processing of his post-conviction requests for relief. (Mem. in Supp. of Federal Habeas
Pet. 4-5.) "[C]laims of error occurring in a state post-conviction proceeding cannot serve as a
basis for federal *habeas corpus* relief." *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988)
(citing cases). This is so because the inmate is detained as a result of the underlying state
conviction, not the post-conviction proceeding. *See Lawrence v. Branker*, 517 F.3d 700, 717
(4th Cir. 2008). Accordingly, Petitioner is not entitled to federal habeas relief upon the foregoing
allegations.

[4] Respondent also moved to dismiss on the grounds that the petition for a writ of habeas
corpus was barred by the relevant statute of limitations. *See* 28 U.S.C. § 2244(d). That defense,
however, was based on the erroneous premise that Petitioner's conviction became final in
November of 2005. Petitioner's conviction became final, as that term is defined in 28 U.S.C.
§ 2244(d)(1), in November of 2006.

2

Petitioner appealed. In his petition for an appeal to the Supreme Court of Virginia, Petitioner argued (1) that the trial court erred in overruling his motions to strike because the evidence was not sufficient to sustain Petitioner's guilt beyond a reasonable doubt, and, (2) that the trial court erred in denying Petitioner's motion for a new trial based on newly discovered evidence. On August 16, 2006, the Supreme Court refused Petitioner's petition for appeal.

On April 16, 2007, Petitioner filed a state petition for a writ of habeas corpus in the Supreme Court of Virginia. In his state habeas petition, Petitioner presented the same claims as he presents his federal petition for a writ of habeas corpus. On June 22, 2007, the Supreme Court dismissed Petitioner's state habeas petition because it found that his claims were defaulted under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because they could have been, but were not, raised on direct appeal.

## II.  Exhaustion And Procedural Default

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997)). Thus, if a petitioner wishes to claim that a state court ruling violates his federal constitutional rights, "he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (*citing Anderson v. Harless*, 459 U.S. 4 (1982). Furthermore, exhaustion also demands that the petitioner fairly present his exact legal theory for relief to the state courts. *See Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996). Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that he properly

3

presented his claim to the state courts in accordance "with the state's chosen procedural scheme." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court is precluded from reviewing the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Petitioner did not fairly present Claims One, Two, and Three on direct review to the Supreme Court of Virginia.[5] *See Duncan*, 513 U.S. at 365-66); *Gray*, 99 F.3d at 162-64. Therefore, pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), the Supreme Court of Virginia dismissed Claims One, Two, and Three because they could have been, but were not raised on direct appeal. *Slayton* "constitutes an adequate and independent

---

[5] Petitioner did not raise any federal constitutional claim on direct appeal in conjunction with his argument regarding the denial of his motion for a new trial. Furthermore, whether the Circuit Court erred under state law in denying the motion for a new trial does not provide a cognizable ground for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

state law ground for default" when so applied. *Vinson v. True*, 436 F.3d 412, 417 (4th Cir.)

(*citing Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998)), *cert. denied*, 547 U.S. 1109

(2006).

Petitioner contends that the ineffective assistance of his counsel constitutes cause to

excuse his procedural defaults. Petitioner failed to exhaust any claim of ineffective assistance of

counsel during his state court proceedings. Furthermore, were Petitioner now to attempt to

exhaust a claim of ineffective assistance of counsel, the claim would be barred under section

8.01- 654(B)(2) of the Virginia Code.[6] Because any claims of ineffective assistance also are

defaulted, they cannot serve as cause to excuse his default. *See Edwards v. Carpenter*, 529 U.S.

446, 451 (2000). Accordingly, Petitioner's assertion of cause is rejected.

Finally, Petitioner asserts that the failure to review his claims would result in a

fundamental miscarriage of justice. (Mem. in Supp. of Federal Habeas Pet. 4.) For the reasons

set forth below, *infra* Part IV, this argument lacks merit. Accordingly, Claims One, Two, and

Three are defaulted and will be DISMISSED.

### III. Sufficiency Of The Evidence

In evaluating a claim of insufficient evidence, the Court must view the evidence in the

light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A

federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the evidence only

if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at

---

[6] That statute provides, in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2008).

5

324. The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (*citing Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).

Petitioner contends that the Commonwealth failed to present sufficient evidence that he performed the criminal acts alleged. Tamesha Green testified that she was returning to her residence with her boyfriend, Cedric Williams, when she observed a van turn around in a nearby cul-de-sac. As the van approached, an occupant left the van with a pistol and began firing at Green. Green retrieved her gun and returned fire. Green's assailant was injured in the exchange. He fell, dropped his weapon, and attempted to get back to the van. The assailant yelled, "'Deon, wait; come on. Don't leave me. Wait, wait; please don't leave me.'" (Trial Tr. 45.) He then reached the van and fled the scene. Green contacted the police.[7]

Upon arrival at the scene the police noted and photographed the gun and shell casings in the street. Green provided the police with a description of the van and a short description of her assailant. Green stated that her assailant was a black male wearing denim jeans, black baseball cap, and a bluish shirt.

The police located a van meeting Green's description a short distance from Green's residence. Petitioner, a black male, was inside the van. He was wearing jeans and bleeding from a gunshot wound to his leg. Petitioner was taken to the hospital.

At the hospital, Petitioner admitted to Detective George Brozzo that Petitioner had been in the area of Ms. Green's residence on August 9, 2003. Petitioner claimed he had driven out to

---

[7] Cedric Williams largely corroborated Green's version of the shooting.

the area in a van belonging to Deon Cameron.  Petitioner claimed that he encountered an

individual who yelled something at him about messing with his girl and the next thing he knew

he had been shot.[8]

Petitioner contends that there was neither sufficient physical evidence nor credible

witnesses to identify him as Ms. Green's assailant.  He states, "Ms. Green could not identify

petitioner in a photo line-up, and was not able to identify me at trial."  (Mem. in Supp. of Federal

Habeas Pet. 11-12.)  He further argues that "[n]o evidence links petitioner to the handgun as the

GSR test was negative."  (Mem. in Supp. of Federal Habeas Pet. 12.)[9]  He concludes, "there's no

positive identification, only testimony from a witness who could not identify me, and testimony

of a convicted felon, Cedric Williams who I discovered after my trial it was he who had shot

me."  (Mem. in Supp. of Federal Habeas Pet. 12.)

Although Ms. Green could not identify the black male who shot at her, she stated that she

had injured him and he had crawled back into a van driven by an individual named Deon.  Within

hours of the shooting, Petitioner, a black male, was found in a van belonging to an individual

named Deon around the block from Ms. Green's residence.  Petitioner was bleeding from a

gunshot wound.  Moreover, Ms. Green positively identified the van as the one in which her

---

[8] At trial, the defense attempted to suggest that the shoot-out had taken place between
Cameron Deon, the driver of the van, and Cedric Williams.  The defense also suggested that, if
Petitioner had fired a gun, it was only after being fired upon by Williams.  Williams, a convicted
felon, adamantly denied firing a gun on the night on August 9, 2003, and Deon invoked his Fifth
Amendment right to silence when called by the defense.

[9] Officer Antonio Jackson testified that it was difficult to conduct a gunshot residue test
on Petitioner because of the amount of blood on his hands.

assailant had fled. Such evidence amply demonstrated that Petitioner was the individual who had attempted to shoot and kill Ms. Green. Accordingly, Claim Four will be DISMISSED.

## IV. Actual Innocence

Prisoners, such as Petitioner, who assert "innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (*quoting Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The Supreme Court has emphasized that to be credible a claim of actual innocence must be supported with "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. The Court then must evaluate "petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328 (*quoting* Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). The Court need not proceed to the second step of the inquiry unless the petitioner first supports his claim with evidence of the requisite quality. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (en banc); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999).

8

The only new evidence Petitioner offers to support his claim of actual innocence is the affidavit of Renita Whitfield.[10] In her affidavit, Whitfield represented that, subsequent to the shooting, she overheard Cedric Williams boast that he had, in fact, shot Petitioner. Such hearsay testimony is hardly the sort of new reliable evidence described by the Supreme Court. *Schlup*, 513 U.S. at 324; *see also Herrera v. Collins*, 506 U.S. 390, 417-18 (1993) (rejecting actual innocence claim based upon hearsay). Petitioner fails to explain how this affidavit would exonerate him. A reasonable jury would be left with the uncontradicted testimony of Tamesha Green that someone had shot at her and tried to kill her and the abundant circumstantial evidence that identified Petitioner as Green's assailant. Thus, Whitfield's affidavit falls far short of demonstrating that "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (*quoting Schlup*, 513 U.S. at 327).

## V.  Conclusion

Based on the foregoing reasons, the Motion to Dismiss (Docket No. 6) is GRANTED and the Petition will be DISMISSED.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Date: 9/22/08
Richmond, Virginia

---

[10] Petitioner initially submitted the affidavit in support of his motion for a new trial before the Circuit Court.

9